STEAMSHIP DEN OF OGIL CO., Limited, v. STANDARD OIL CO. OF NEW YORK.

(District Court, S. D. New York. August 8, 1911.)

1. SHIPPING (§ 147*)—FREIGHT—SHORT DELIVERY.

Under a provision in a charter party of a vessel as a private carrier of oil in cases that the cargo should be received and delivered alongside within reach of the vessel's tackles, and that the ship should receive a stated sum for each case delivered whether full, part full or empty, proof that the vessel received the number of cases stated in the bills of lading, that none were stolen during the voyage, and that all on board were delivered alongside by her tackles into lighters, entitles her to freight on all shown by the bills of lading, although there may have been a shortage when the oil reached its destination.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 147.*]

2. SHIPPING (§ 148*)—FREIGHT—DEDUCTION FOR DAMAGE TO CARGO BY STEVE-
DORE.

Where such charter provided that the vessel's stevedore for loading and unloading should be approved by the charterer, and his agent refused to permit the master to discharge a stevedore for rough handling of the cargo in unloading, the charterer was not entitled to make a deduction from freight on account of breakage by such stevedore.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 148.*

Deductions and offsets from charter hire of vessel, see note to Tweedie Trading Co. v. George D. Emery Co., 84 C. C. A. 254.]

In Admiralty. Suit by the Steamship Den of Ogil Company, Limited, against the Standard Oil Company of New York. Decree for libelant.

Convers & Kirlin (Charles R. Hickox and Russell T. Mount, of counsel), for libelant.

Burlingham, Montgomery & Beecher (Charles C. Burlingham and Robinson Leech, of counsel), for respondent.

HOLT, District Judge. This suit is brought by the owner of the steamship Den of Ogil to recover an amount deducted by the respondent from the amount claimed by the libelant to be due for charter hire. The steamer was chartered to the respondent to carry a cargo of oil on a voyage from New York to Penang, Singapore, Macassar, and one port on the north coast of Java. The respondent owned the cargo, and was both consignor and consignee. The steamer, therefore, was a private, and not a common, carrier. The charter party provided that the charterer should pay for the use of the vessel "20½ cents on each and every case delivered, whether full, part full or empty," and that the cargo was "to be received and delivered alongside, within reach of the vessel's tackles." It also contained the following pro-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

vision: "The vessel's stevedore, for loading and discharging, to be approved by the charterer or his agents." The oil was carried in wooden cases, each inclosing two tins containing five gallons each. Two bills of lading were issued, one for 68,045 cases consigned to Penang and Singapore, and one for 103,000 cases consigned to Macassar and Sourabaya. The steamer proceeded to the four ports in turn, discharged its entire cargo, and claimed compensation at the rate of 20½ cents for each of 171,045 cases, the number stated in the bills of lading. The respondent deducted $6.48 for alleged shortage of 2½ cases at Singapore, $314.68 for alleged shortage of 163 cases at Sourabaya, and $172.25 for alleged damage from breakage of cases while discharging at Macassar, making in the aggregate $493.41, which this suit is brought to recover.

[1] The respondent has offered no evidence in this case. There is no affirmative proof, either of shortage or damage in delivery. As, however, the charter hire agreed on was 20½ cents for each case delivered, the libelant must establish that the number of cases mentioned in the bills of lading were delivered. The evidence satisfies me that the number of cases stated in the bills of lading were taken on board at New York, that none of them were stolen or abstracted from the steamer on the voyage, and that all the cases in the ship were delivered alongside by the vessel's tackles. It follows, therefore, that the number of cases stated in the bills of lading were delivered over the vessel's side. If that number did not reach the go-downs, the steamer was not responsible. There were opportunities for stealing during the transportation on the lighters and bullock carts from the steamer to the go-downs, and in my opinion any shortage which occurred was caused by thefts at that time.

[2] In respect to the respondent's deduction for damage from breakage of cases at Macassar, in the first place, there is no evidence on the subject in the case, except that of the captain, who admits that the stevedore at Macassar did some damage from rough handling of cases in unloading. By the terms of the charter party the stevedore for loading and unloading is spoken of as the vessel's stevedore, but it is provided that he is to be approved by the charterer. The stevedores, in fact, at the first three ports were selected by the respondent's agents there. But they were paid by the vessel, and are to be regarded, I think, as in the employ of the vessel. The evidence shows, however, that the captain, as soon as he noticed the rough handling of cases by the Macassar stevedore, proposed to the respondent's agents to discharge him; but they objected, stating he had the contract to transport the oil by bullock carts from the shore to the go-down, and that his discharge as stevedore would make trouble. As the stevedore by the terms of the charter was to be approved by the charterer or his agents, no new stevedore could be appointed by the captain against the objection of the respondent's agents. I cannot see, therefore, how the vessel is responsible for any damage caused by the negligence of the stevedore at Macassar in handling the cases.

My conclusion is that the libelant is entitled to a decree for the amount demanded in the libel.